UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **MIGUEL D. LOPEZ MORALES,** | : |
| *Plaintiff* | : |
| **v.** | : |
| | : |
| **LYNCH'S CLEANING SERVICE, INC.,** | : |
| **alias, and SHAWN G. LYNCH, alias,** | : |
| *Defendants* | : |

**COMPLAINT**

### I.   Introductory Statement

1. This action is brought by Plaintiff Miguel D. Lopez Morales ("Plaintiff") against his former employers, Lynch Cleaning Service, Inc., alias, and Shawn G. Lynch, alias, seeking compensatory, liquidated, and punitive damages, civil penalties, counsel fees, costs and other equitable relief arising out of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq*. and the Rhode Island Payment of Wages Act ("RIPWA"), R.I. Gen. Laws § 28-12-1, *et. seq*. and § 28-14-1, *et. seq*.

### II.   Parties

2. Plaintiff Miguel D. Lopez Morales is a resident of the City of Central Falls, County of Providence and State of Rhode Island.

3. Defendant Lynch's Cleaning Service, Inc., alias ("Defendant Lynch's Cleaning"), is a domestic corporation duly incorporated under the laws of the State of Rhode Island with a principal place of business located at 25 Starline Way, #7, City of Cranston, County of Providence, and State of Rhode Island. On information and belief, Defendant Lynch's Cleaning also does business in the State of Rhode Island under the fictitious name of "Lynch's Cleaning and Restoration Service, Inc."

4. Defendant Shawn G. Lynch, alias ("Defendant Lynch") is the President and sole (or principal) owner of Defendant Lynch's Cleaning and, on information and belief, a resident of the City of Cranston, County of Providence, and State of Rhode Island.

5. At all relevant times, Defendant Lynch's Cleaning and Defendant Lynch werejointly and severally Plaintiff's "employer" within the meaning of the FLSA and RIPWA.

6. As used herein, the term "Defendants" refers to all Defendants collectively, unless otherwise indicated expressly or by context.

### III.   Jurisdiction

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, 2201 and 2202.

### IV.   Venue

8. Venue is proper in this Court insofar as, on information and belief, Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. § 1391. Venue is also proper because all of the acts and/or omissions giving rise to the claims herein occurred in the District of Rhode Island.

### V.   Material Facts

*Defendants' Liability*

9. At all relevant times, Defendant Lynch's Cleaning was a cleaning and restoration service business providing said services to various clients.

10. At all relevant times, Defendants Lynch's Cleaning and Lynch conducted business in the State of Rhode Island through the provision of cleaning services out of 25 Starline Way, #7, Cranston Rhode Island and served clients within the State of Rhode Island.

11. At all relevant times, Plaintiff was "engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203 (b), (i)-(j), 206(a), and 207(a), in his capacity as a full time cleaner employed by Defendants.

12. At all relevant times, Defendant Lynch's Cleaning was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203(s).

### *Plaintiff's Work for Defendants and Misclassification as a 1099 Contractor*

13. From on or about a date in 2012 through on or about May 8, 2020 Defendants employed Plaintiff as a cleaner predominantly in Providence County, Rhode Island.

14. Defendants classified Plaintiff as an independent contractor and not an employee.

15. Plaintiff primary performed janitorial and house cleaning work as well as some interior restoration and demolition work as his only duties for Defendants.

16. Defendants paid Plaintiff the same hourly rate no matter what work he did or how many hours he worked in a given work week.

17. Plaintiff was never asked or allowed to exercise any independent judgment or discretion whatsoever regarding any aspect of his work or any aspect of his job and Defendants never afforded Plaintiff any independent judgment or discretion whatsoever regarding any matter of significance.

18. Plaintiff worked at the sites he was told, at the times he was told, and did the jobs he was told under the supervision of Defendants and their agents including supervisor Carlos Pereira.

19. Throughout the course of his employment with Defendants, Plaintiff reported to and was supervised by all Defendants.

20. Plaintiff had no control over the days and/or times that Defendants assigned him to work.

21. At all relevant times, Defendants established Plaintiff's work schedule.

22. Defendants had the ability to adjust Plaintiff's work schedule without Plaintiff's

approval and/or input.

23. Defendants provided Plaintiff with all the materials and tools he used to perform the work they assigned him.

24. Defendants never shared nor offered to share with Plaintiff business-related profits derived Lynch's Cleaning Services.

25. As a cleaner and laborer, Plaintiff's job did not require extensive skill, initiative, training, nor expertise.

26. Defendant Lynch's Cleaning Service's cleaners and laborers are integral and essential to Defendant Lynch's Cleaning Service's success and profitability in that **all** of its revenue is derived solely from payment for the completion of work done by cleaners and laborers.

27. Defendants had the ability to, and actually did, fire Plaintiff.

28. Further confirming Defendants' contemporaneous understanding that Plaintiff was Defendants' statutory "employee" and not an "independent contractor", Defendants never provided Plaintiff a 1099 annual payment report as required by 26 U.S.C. § 6041 for payments of $600 or more to independent contractors, but instead paid Plaintiff on a "cash basis."

*Defendants' Failure to Pay Overtime*

29. At all relevant times, Plaintiff was a non-exempt employee entitled to payment of wages for all hours worked and for overtime wages as defined under applicable law.

30. Plaintiff began working for Defendants in 2012.

31. Defendants assigned Plaintiff the starting hourly rate of $11 per hour.

32. After Defendants employed Plaintiff for two (2) years, Defendants then increased Plaintiff's hourly rate by $1 to $12 per hour on or about 2014.

33. After Defendants employed Plaintiff for three (3) additional years, Defendants then increased Plaintiff's hourly rate by $1 to $13 per hour on or about 2017.

34. Defendants paid Plaintiff the same hourly rate no matter what work he did or how many hours he worked in a given work week nor with any respect to days of the week or holidays.

35. Defendants routinely required Plaintiff to work more than forty (40) hours in a given work week, a demand which Plaintiff had no say over, but Defendants failed to pay him one and one-half times their regular rate of pay for the hours worked weekly in excess of forty (40).

36. At all relevant times throughout Plaintiff's employment, Defendants required Plaintiff to work ten (10) hours each day Monday through Friday. On average, Defendants required Plaintiff to work fifty (50) hours per week.

37. In the course of each year of Plaintiff's employment, Defendants required Plaintiff to work eight (8) or more hours on more than ten (10) Saturdays. On average, Defendants required Plaintiff to more than eighty (80) annual Saturday overtime hours of work.

38. In the course of each year of Plaintiff's employment, Defendants required Plaintiff to work eight (8) or more hours on more than five (5) Sundays. On average, Defendants required Plaintiff to more than forty (40) annual Sunday overtime hours of work.

39. Accordingly, in the three years prior to the filing of this Complaint, Defendants required Plaintiff to work and knew that Plaintiff worked approximately 640 hours of overtime work for which he was not paid overtime wages during each twelve (12) month calendar period.

40. From on or about October 15, 2017 through October 15, 2018, Plaintiff worked approximately 640 hours of overtime work for which he was not properly compensated at the overtime rate.

41. October 16, 2018 through October 15, 2019, Plaintiff worked approximately 640 hours of overtime work for which he was not properly compensated at the overtime rate.

42. October 16, 2019 through May 8, 2020, Plaintiff worked approximately 374 hours of overtime work for which he was not properly compensated at the overtime rate.

43. Despite the fact that Plaintiff was a non-exempt employee, Defendants failed or refused to pay Plaintiff for overtime pay on numerous workweeks as required by the FLSA and RIPWA and alleged herein.

### *Defendant Lynch's Individual Liability*

44. At all relevant times, Defendant Lynch, in his capacity as owner and operator, retained and executed total operational and financial control over Defendant Lynch's Cleaning's business and financial affairs.[1]

45. Defendant Lynch was responsible for hiring employees to work at Defendant Lynch's Cleaning Service.

46. Defendant Lynch established, permitted, condoned, and enforced a policy refusing to pay Plaintiff overtime for hours worked in a given work week in excess of forty (40) hours and for work performed on Sundays and holidays.

47. Defendant Lynch had the ability to, and did, exert full authority over the policy refusing to pay Plaintiff overtime for hours worked in a given work week in excess of forty (40) hours and for work performed on Sundays and holidays.

48. Defendant Lynch had the ability to change and rectify the policy refusing to pay Plaintiff overtime for hours worked in a given work week in excess of forty (40) hours and for work performed on Sundays and holidays.

---

[1] *See Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007)(corporate officer personally liable because he was instrumental in causing corporation to violate FLSA); *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *see also Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991), *and cases cited therein*.

49. Defendant Lynch had operational control over all aspects of Defendant Lynch's Cleaning Service's day-to-day business-related functions.

50. Defendant Lynch directed all of Defendant Lynch's Cleaning Service's employment practices, including setting Plaintiff's wages and his work schedule.

51. At all relevant times, Defendant Lynch had active control and management over Defendant Lynch's Cleaning Service in relation to the employees working there, including Plaintiff.

52. Throughout Plaintiff's employment from on or about 2012 through May 8, 2020, Defendant Lynch personally acted as the sole decision-maker regarding the hiring, compensation, utilization, supervision, workers compensation coverage and workplace safety and health of Plaintiff with Defendant Lynch personally determining and proactively controlling all terms, conditions and emoluments of Plaintiff's employment, including as delineated herein.

53. Accordingly, Defendant Lynch controlled Defendant Lynch's Cleaning Service's financial affairs and was responsible for above described unlawful payment scheme and the failure to compensate Plaintiff for overtime work as prescribed by the FLSA and RIPWA.

### *Work Suffered or Permitted*

54. Defendants are liable for the payment of wages or overtime wages for all hours Plaintiff was "suffered or permitted to work," regardless of whether the work was requested, authorized, or needed, whenever the Defendants knew or had constructive knowledge that the work was being performed.[2]

55. Defendants knew or had reason to believe that Plaintiff was working in excess of forty (40) hours weekly on a regular basis.

---

[2] As long as the employer knows or has reason to believe that and employee is continuing to work and the time is working time, the employee is entitled to the payment of wages from the employer.  *See* 29 C.F.R. § 785.11.

56. Nevertheless, Defendants failed or refused to pay Plaintiffs the compensation to which they were legally entitled for all overtime hours worked.[3]

57. Even where an employer claims lack of any direct knowledge of unclaimed overtime hours worked, knowledge by supervisors of an employee's overtime is imputed to the employer for purposes of determining an employer's liability under the FLSA.[4]

### *Defendants' Failure to Keep Employment Records*

58. Defendants willfully and repeatedly violated 29 U.S.C. §§ 211(c) and 215(a)(5) of the FLSA by failing to make, keep and/or preserve adequate and accurate records of Plaintiff's wages, hours, and other conditions and practices of employment as prescribed by regulations duly issued pursuant to authority granted under the FLSA and found in 29 C.F.R. §516.2.

59. At all relevant times, Defendants failed and/or refused to make and/or keep in or about Defendant Lynch's Cleaning's various records that the RIPWA mandates employers to make and keep, including, but not limited to, the name, address, and occupation of each of its employees, their rate of pay, the amount paid each pay period to each employee, and the hours worked each day and each work week by each employee. *See* R.I. Gen. Laws §§ 28-12-12 and 28-14-12.

60. Defendants failed to establish a regular pay period or provide Plaintiff with a statement of the hours worked during each applicable pay period or a record of all deductions

---

[3] Once an employer knows or has reason to know that an employee is working overtime, *it cannot deny compensation even where the employee fails to claim overtime hours or the work was not requested.* Holzapfel v. Town of Newburgh, N. Y., 145 F.3d 516 (2d Cir. 1998); *Johnson v. RGIS Inventory Specialists,* 554 F. Supp. 2d 693 (E.D. Tex. 2007).

[4] *See* 29 U.S.C.A. §§ 203(g), 207(a)(l); *Cunningham v. Gibson Elec. Co., Inc.,* 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999). Moreover, *where an employer claims a lack of knowledge of employee's overtime, but the evidence strongly supports an inference of deliberate ignorance, the proper conclusion, for purposes of the FLSA is that the employer knew about the overtime hours. Id.* at 976. Simply put, it is the duty of the management to exercise its control and see that *work is not performed* if it does not want it to be performed. 29 C.F.R. § 785.13; *Prise v. Alderwoods Grp., Inc.,* 817 F. Supp. 2d 651 (W.D. Pa. 2011). The mere promulgation of a rule against such work is not enough. *Id.* Employers cannot sit back and accept the benefits without compensating for them. *Id.*

made from gross earnings during each pay period together with an explanation of the basis or reason for the deductions. *See* R.I. Gen. Laws §§ 28-14-2 and 2.1.

61. Indeed, throughout Defendants' employment of Plaintiff, all recompense that Defendants did pay Plaintiff was always paid to Plaintiff only in the form of undocumented weekly cash payments.

62. Defendants never caused a payroll direct deposit to be made to or on behalf of Plaintiff.

*Damages*

63. Both the FLSA and the RIPWA require employers to pay their non-exempt employees at a rate not less than one and one-half (1 ½) times their regular rate of pay for all hours worked in excess of forty (40) in any one (1) workweek. 29 U.S.C. § 207(a)(l); R.I. Gen. Laws § 28-12-4.1.

64. Defendants willfully and repeatedly violated the above provisions of the FLSA and/or the RIPWA by failing to compensate them at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) in any one (1) workweek as alleged herein.

65. Defendants willfully and repeatedly violated 29 U.S.C. §§ 211(c) and 215(a)(5) of the FLSA by failing to make, keep, and/or preserve adequate and accurate records of Plaintiffs' wages, hours, and other conditions and practices of employment as prescribed by regulations duly issued pursuant to authority granted under the FLSA and found in 29 C.F.R. § 516.2.

66. At all relevant times, Defendants failed and/or refused to make and/or keep in or about their premises various records of Plaintiffs' employment that the RIPWA mandates employers make and keep, including, but not limited to, the hours worked each day and each work week by each employee. *See* R.I.G.L. § 28-12-12 and §§ 28-14-2.1 and 12.

67. As a result of the Defendants' concerted acts and/or omissions, including, but not limited to, those described herein, Plaintiffs have sustained loss of wages and overtime pay, and other compensation and/or benefits of employment and has suffered emotional distress and other great damage as alleged herein.

## VI. Claims for Relief

68. Plaintiff incorporates in the counts below the allegations contained in ¶¶1 through 67 above.

### Count One
*Violation of FLSA, 29 U.S.C. § 201, et seq.*

69. Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the FLSA, thereby causing Plaintiffs to suffer damages as aforesaid, for which they are entitled to relief pursuant to 29 U.S.C. § 216(b).

### Count Two
*Violation of RIPWA, R.I. Gen. Laws § 28-12-1, et seq. and § 28-14-1, et. seq.*

70. Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the RIPWA, thereby causing Plaintiffs to suffer damages as aforesaid, for which they are entitled to relief pursuant to R.I. Gen. Laws § 28-14-19.2 and § 28-14-20.

### Count Three
*Misclassification in Violation of R.I. Gen. Laws § 28-14-19.1*

71. Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, misclassified Plaintiffs in violation of R.I. Gen. Laws § 28-14-19.1, thereby causing Plaintiffs to suffer damages as aforesaid, for which they are entitled to relief pursuant to R.I. Gen. Laws § 28-14-19.2.

## VII. Prayers for Relief

**WHEREFORE,** Plaintiff prays that this Court grant the following relief:

1. A declaratory judgment declaring that the acts and/or omissions of Defendants, including, but not limited to those complained of herein, are in violation of the FLSA and the RIPWA.

2. An injunction directing Defendants to take such affirmative action as is necessary to refrain from such conduct as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. An award of all unpaid wages and benefits.

4. An award of compensatory damages.

5. An award of liquidated damages pursuant to 29 U.S.C. § 216(b).

6. An award of liquidated damages in an amount two times the amount of wages and and/or benefits owed pursuant to R.I. Gen. Laws § 28-14-19.2 and § 28-14-20.

7. An award of reasonable attorney's fees and costs of litigation pursuant to 29 U.S.C. § 216(b).

8. An award of reasonable attorney's fees and costs pursuant to R.I. Gen. Laws § 28-14-19.2.

9. Imposition of a civil penalty against Defendants pursuant to R.I. Gen. Laws § 28-14-19.1.

10. An award of other appropriate equitable relief pursuant to 29 U.S.C. § 216(b).

11. An award of other appropriate equitable relief or penalties pursuant to R.I. Gen. Laws § 28-14-19.2.

12. An award of such other and further relief as this Honorable Court deems just and proper.

### VIII. **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all counts so triable.

## IX.     Designation of Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esquire, as trial counsel.

                                                Plaintiff,
                                                By his attorneys,
                                                **SINAPI LAW ASSOCIATES, LTD.**

**Date:  October 15, 2020**              /s/ **Richard A. Sinapi**
                                                **Richard A. Sinapi, Esq.  (#2977)**
                                                2374 Post Road, Suite 201
                                                Warwick, RI 02886
                                                Phone:  (401) 739-9690; FAX:  (401) 739-9040
                                                ras@sinapilaw.com